UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------- x
LIBERTY INSURANCE CORPORATION,   :
                                 :
        Plaintiff,               :   Civil No. 3:19-cv-00005 (AWT)
                                 :
v.                               :
                                 :
CHRISTOPHER LAMB, JOANN          :
LOHBUSCH, MATTHEW LOHBUSCH,      :
JANE DOE ##1-3, and JOHN DOE #1, :
                                 :
        Defendants.              :
-------------------------------- x
```

**RULING ON MOTION FOR JUDGMENT ON THE PLEADINGS**

The plaintiff, Liberty Insurance Corporation ("Liberty Insurance") brought this action seeking a judgment declaring that it has no duty to defend and no duty to indemnify Joann Lohbusch and Matthew Lohbusch (the "Lohbusch Defendants") and Christopher Lamb ("Lamb") with respect to an underlying state court action arising out of injuries suffered by Jane Doe #1, Jane Doe #2, Jane Doe #3, and John Doe #1 (the "Doe Defendants") as the result of Lamb's computer hacking and related activities. Liberty Insurance moves for judgment on the pleadings. For the reasons set forth below, the motion is being granted.

I.   **FACTUAL ALLEGATIONS**

Liberty Insurance is an insurance company organized under the laws of Illinois, with a principal place of business in the

Commonwealth of Massachusetts. The defendants all reside in the State of Connecticut.

    **A.    The Underlying Action**

On March 16, 2018, Lamb was arrested and charged in 51 counts with the following offenses: promoting a minor in an obscene performance, voyeurism with malice, computer crime, unlawful dissemination of an intimate image, and coercion. On June 8, 2018, Lamb was re-arrested and charged with additional counts of computer crimes and unlawful dissemination of an intimate image. On November 2, 2018, Lamb pled guilty to these crimes. The victims of Lamb's offenses include the four Doe Defendants.

In Jane Doe #1, et al. v. Lamb, Docket No. WWM-CV-18-6015163-S (the "Underlying Action"), an action pending in Connecticut Superior Court, the Doe Defendants assert claims against the Lohbusch Defendants and Lamb arising out of Lamb's criminal conduct. In the Underlying Action, the Doe Defendants allege that Lamb used one or more computers supplied to him by Joann Lohbusch to hack into their cloud-based personal accounts and social media accounts, gained access to the contents of those accounts, including but not limited to nude photographs, and thereafter posted nude photographs and disparaging comments about them on social media sites and/or forwarded that material via electronic means to, inter alia, their contacts, parents and

workplaces. Jane Doe #1 alleges that this conduct took place as to her from approximately 2012 through 2017. Jane Doe #2 alleges that this conduct took place as to her from approximately 2013 to 2017.

The Doe Defendants have brought claims against Lamb for intentional infliction of emotional distress, negligent infliction of emotional distress, libel, invasion of privacy by false light, and invasion of privacy by intrusion upon seclusion. The Doe Defendants allege that as a result of Lamb's conduct, they have experienced some or all of the following injuries: severe anxiety, shame, embarrassment, loss of sleep, weight loss, hair loss, nausea, shaking tremors, heart racing, nightmares, thoughts of suicide, self-harm, high blood pressure, panic attacks, self-medication, loss of community, depression, post-traumatic stress disorder, obsessive-compulsive disorder, taunting, bullying, and harassment.

The Doe Defendants have brought claims against the Lohbusch Defendants for negligence, negligent entrustment, and negligent supervision of Lamb during the period when he was a minor. The Doe Defendants also claim that Joann Lohbusch fraudulently transferred property for the purpose of preventing them from attaching that property in the Underlying Action.

B.   The Insurance Policies

Liberty Insurance issued homeowners insurance policies to Joann Lohbusch, as the named insured, with effective dates from November 15, 2016 to November 15, 2017, Policy No. H37-218-108249-75 ("Policy I") and from November 15, 2017 to November 15, 2018, Policy No. H37-218-108249-75 7 7 ("Policy II") (collectively, the "Policies"). The defendants contend that because Lamb is the son of Joann Lohbusch and resided with her, he is an insured under the Policies.

The Policies provided personal liability coverage with a limit of $300,000 for each occurrence. Under Coverage E – Personal Liability, in the event a claim is made or a suit is brought against any insured for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which coverage applies, Liberty Insurance agreed to:

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and
2. Provide a defense at our expense by counsel of our choice even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

(Policy II, ECF No. 41-3, at 16 of 44.)

"Occurrence" is defined as "an accident, including continuous and repeated exposure to substantially the same

general harmful conditions, which results, during the policy period, in: a. 'Bodily injury'; or b. 'Property damage.'" (Id. at 6 of 44.) The Policies define "Bodily injury" as "bodily harm, sickness or disease, including required care, loss of services and death that results." (Id.) The Policies define "Property damage" as "physical injury to, destruction of, or loss of use of tangible property." (Id.)

The Policies contain certain pertinent exclusions. First, coverage is excluded for bodily injury or property damage "[a]rising out of sexual molestation, corporal punishment or physical or mental abuse . . . ." (Id. at 17 of 44.) Second, coverage is excluded for bodily injury or property damage "[w]hich is expected or intended by the 'insureds' . . . ." (Id. at 36 of 44.) The Policies only cover bodily injury or property damage which "occurs during the policy period." (Id. at 20 of 44.) Under the Policies, "Insured" means the named insured, i.e., Joann Lohbusch, and residents of her household who are her relatives. (Id. at 6 of 44.)

## II. LEGAL STANDARD

"After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). When considering a Rule 12(c) motion for judgment on the pleadings, the court employs the same standard applicable to dismissals pursuant to Rule 12(b)(6) motion to

dismiss for failure to state a claim upon which relief can be granted. See L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 429 (2d Cir. 2011). When deciding a motion for judgment on the pleadings under Rule 12(c) or a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

On a Rule 12(c) motion, the court considers "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009). The court's consideration may include "any written instrument attached to [the complaint] as an exhibit, . . . materials incorporated in it by reference, . . . and documents that, although not incorporated by reference, are 'integral' to the complaint . . . ." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

**III. DISCUSSION**

Liberty Insurance maintains that it has no duty to defend, and no duty to indemnify, with respect to the claims of the Doe Defendants because the Policies provide coverage only for claims that allege bodily injury or property damage caused by an occurrence, and the complaint in the Underlying Action makes no such claim. Liberty Insurance also argues that, in any event, there is no coverage because the Policies explicitly exclude coverage for bodily injury and property damage "'arising out of sexual molestation, corporal punishment or physical or mental abuse'" (Mem. of Law in Supp. of Mot. for J. on the Pleadings, ECF No. 48-1 ("Pl.'s Mem.") at 18) and also exclude coverage for bodily injury and property damage "that was expected or intended by the insured" (id. at 23).

"An insurer, under Connecticut law, has a duty to defend if a complaint states facts that brings its claim or claims within the policy coverage. The interpretation of an insurance contract as well as an insurer's duty to defend are questions of law to be decided by the Court. The insured in a coverage dispute has the burden of proof to show that the claims against him are within the express terms of the insurance policy." Allstate Ins. Co. v. Burnard, No. 3:08cv603 (VLB), 2010 WL 1332002, at *3 (D. Conn. Mar. 31, 2010) (internal citations omitted). "[T]he insurer bears the burden of proving that an exclusion to

coverage applies." Nationwide Mut. Ins. Co. v. Pasiak, 327 Conn. 225, 239 (2017)(citing Capstone Building Corp. v. Am. Motorists Ins. Co., 308 Conn. 760, 788 n.24 (2013).

**A.   "Bodily Injury"**

Liberty Insurance argues that there is no claim for bodily injury because the complaint in the Underlying Action alleges only emotional distress resulting from Lamb's "alleged computer infiltration of private accounts, dissemination of personal images and disparagement of" the Doe Defendants. (Pl.'s Mem. at 17.) The court agrees.

"An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy." Schultz v. Hartford Fire Ins. Co., 213 Conn. 696, 702 (1990). "If the terms of the policy are clear and unambiguous, then the language must be given its natural and ordinary meaning." Cunninghame v. Equitable Life Assur. Soc. of U.S., 652 F.2d 306, 308 (2d Cir. 1981) (citation omitted). When interpreting an insurance policy with ambiguous terms, courts look at "the coverage that the insured expected to receive coupled with the coverage that the insurer expected to provide, as expressed by the language of the entire policy." Wentland v. Am. Equity Ins. Co., 267 Conn. 592, 601 (2004). "[A]n ambiguity exists where the

-8-

terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person . . . ." Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co., 411 F.3d 384, 390 (2d Cir. 2005)(internal quotation marks and citation omitted). "[A]mbiguity will be resolved in favor of the insured." Woodstock Resort Corp. v. Scottsdale Ins. Co., 927 F. Supp. 149, 153 (D. Vt. 1996)(citation omitted). The existence of a dispute over the meaning of language in an insurance policy does not, in and of itself, render that language ambiguous. See Jewish Cmty. Ctr. of Staten Island v. Trumbull Ins. Co., 957 F. Supp. 2d 215, 228 (E.D.N.Y. 2013).

When interpreting language of insurance policies, Connecticut courts have concluded that "the word bodily as ordinarily used in the English language strongly suggests something physical and corporeal, as opposed to something purely emotional." Moore v. Cont'l Cas. Co., 252 Conn. 405, 410 (2000). Also, the word "bodily" can be used to limit the scope of the insurance policy's coverage. See id. at 411 ("[T]he word bodily is used as an adjective to modify the terms injury, harm, sickness and disease . . . . It is fair to infer that the use of the term bodily was employed in the policy both accurately and purposefully.")

"[E]motional distress, by itself, is not a bodily injury . . . ." Velecela v. All Habitat Serv., LLC, 322 Conn. 335, 340

(2016)(quoting Galgano v. Metro. Prop. & Cas. Ins. Co., 267 Conn. 512, 521 (2004). "The majority rule is that, as a matter of law, the term bodily injury in a liability policy does not include emotional distress unaccompanied by physical harm." Moore, 252 Conn. at 411. In addition, "[m]any courts have found that physical symptoms which occur as a result of emotional distress still do not count as [']bodily injury[']." Knutsen v. State Farm Fire and Cas. Co., 375 F. Supp. 3d 514, 520-21 (D. Vt. 2019); Taylor v. Mucci, 288 Conn. 379, 387 (2008). "[A]lthough emotional distress might be accompanied by some physical manifestations, it [does] not follow that emotional distress constituted a type of bodily injury under the policy." Knutsen, 375 F. Supp. 3d at 521 (internal quotations and citation omitted). "[A]n allegation of emotional distress . . . does not trigger a duty to defend under the coverage for '[b]odily [i]njury,' which is defined in the insurance policy as 'bodily harm, sickness or disease . . . .'" Colonial Penn Ins. Co. v. Dimitriadis, No. CV020392908, 2003 WL 22904286, at *3 (Conn. Super. Ct. Nov. 14, 2003)(internal quotation marks omitted)(quoting Moore, 252 Conn. at 410).

"The Doe Defendants maintain that as a matter of contract interpretation the subject policy defines bodily injury to include emotional distress." (Doe Defs.' Mem. in Supp. of Obj. to Pls.' Mot. for J. on the Pleadings, ECF No. 58 ("Does' Mem.")

at 4.) With respect to "bodily sickness" and "bodily disease", they argue that:

> If a person sustains a type of disease, it qualifies as a bodily injury. Webster's Dictionary, Third College Edition (1988) defines "sick" as "suffering from disease or illness; unwell . . . deeply disturbed or distressed; extremely upset, as by grief, disappointment, disgust, failure, etc.; . . . mentally ill or emotionally disturbed." This same dictionary defines "disease" to be "any departure from health; illness in general."
>
> From the internet . . . Merriam-Webster defines sick as "affected with disease or ill health," "queasy, nauseated;" and "mentally or emotionally unsound or disordered."

(Id. at 4-5(emphasis omitted).) However, the Doe Defendants cannot substitute definitions from the dictionary for the interpretations of those terms by the Connecticut Supreme Court.

The Lohbusch Defendants concede that the majority of the injuries cited by the Doe Defendants fall within the category of emotional distress but contend that "at least one of the claimed injuries relate[s] to the physical injuries of the body. . . . Specifically, Jane Doe 1 cites self-harm as an injury. . . . In addition, Jane Doe 3 alleges that she experienced and continues to experience aggravation of previous stomach issues." (Mem. of Law in Supp. of Obj. to Pl.'s Mot. for J. on the Pleadings, ECF No. 55 ("Lohbuschs' Mem.") at 7-8.) The court agrees with Liberty Insurance that the Lohbusch Defendants' argument fails for two reasons. First, the Policies provide coverage only for damages because of bodily injury and property damage caused by

an "occurrence", and an occurrence is "an accident" which results "during the policy period" in bodily injury or property damage. (Policy II, ECF No. 41-3, at 6 of 44.) Second, the "'[s]elf harm' is a consequence of the injury sustained by virtue of the wrongful conduct; 'self-harm' is not the injury itself." (Reply Mem. of Law in Supp. of Mot. for J. on the Pleadings, ECF No. 56 ("Reply") at 2.)

The Lohbusch Defendants cite to a definition of self-harm in Psychology Today: "Self-harm . . . is the act of deliberately inflicting pain and damage to one's own body." (Lohbuschs' Mem. at 8.) But as Liberty Insurance observes, this case involves claims by the Doe Defendants that they were subject to abuse which resulted in their injuries, and those injuries included emotional distress, self-harm, and aggravation of previous stomach issues; and, as discussed below, the Policies expressly exclude injury arising out of abuse.

**B.   "Property Damage"**

Liberty Insurance asserts that "[t]he claims are that the insureds are responsible for the hacking of the claimants' personal information and improper dissemination and disparagement of wrongfully taken images. There is no claim that the Doe parties suffered physical damage to their property, destruction of their property or even loss of use of their property. Moreover, all of the property at issue was intangible

-12-

rather than tangible." (Pl.'s Mem. at 17-18.) The court agrees, and the defendants do not contend otherwise.

### C. Exclusions from Coverage

Liberty Insurance argues that even if the alleged harm to the Doe Defendants resulting from Lamb's conduct falls within the coverage of the Policies as bodily injury or property damage, it has no duty to defend or indemnify because the Policies exclude coverage for bodily injury and property damage arising out of mental abuse or that was expected or intended by the insured. The court agrees.

Under Connecticut law, "[i]n an insurance policy, an exclusion is a provision which eliminates coverage where, were it not for the exclusion, coverage would have existed." Viking Constr., Inc. v. 777 Residential, LLC, 190 Conn. App. 245, 255 (2019)(quoting Hammer v. Lumberman's Mut. Cas. Co., 214 Conn. 573, 588 (1990)). As noted above, "the insurer bears the burden of proving that an exclusion to coverage applies." Nationwide Mut., 327 Conn at 239. Policy exclusions are enforced only when they have a definite and precise meaning. See Angus v. Maxum Indem. Co., No. FSTCV176030765S, 2018 WL 2423591, at *5 (Conn. Super. Ct. May 7, 2018).

In Merrimack Mut. Fire Ins. Co. v. Ramsey, 117 Conn. App. 769 (2009), the Connecticut Appellate Court concluded that the

very exclusion that is at issue here is unambiguous. The court framed the issue as follows:

> Thus, the dispositive question in this case is whether exclusion 1k is ambiguous. The exclusion states: "Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to 'bodily injury' . . . . [a]rising out of sexual molestation, corporal punishment or physical or mental abuse . . . ." The policy defines "'bodily injury'" as "bodily harm, sickness or disease, including required care, loss of services and death that results." The policy does not define "sexual molestation," "corporal punishment" or "physical or mental abuse."

Merrimack, 117 Conn. App. at 772. There the defendant argued that the exclusion was ambiguous because "the term 'physical abuse' contains an implicit intentionality requirement . . . ." Id. The court concluded that such a reading of the policy "is plainly unreasonable" (id.), noting that, as is the case here, "the policy contains a separate exclusion that applies specifically to intentional acts." Id. at 772-73.

In Safeco Ins. Co. of Am. v. Vecsey, Civil No. 3:08cv833 (JBA), 2010 WL 3925126 (D. Conn. Sept. 30, 2010), the court interpreted an exclusion for "[a]ny personal injury arising out of sexual molestation or sexual harassment or physical or mental abuse." Vecsey, 2010 WL 3925126, at 2 (emphasis and internal quotation marks omitted). In construing the exclusion for physical or mental abuse, the court held that the term abuse contains no implicit intentionally requirement and that the term "abuse" is unambiguous. The court's analysis was as follows:

> In light of the separate and distinct intentional-acts-or-injuries exclusion in each policy that excludes coverage where the "loss was expected or intended by the insured" and not merely foreseen by the insured, see Vermont Mut. Ins. Co. v. Walukiewicz, 290 Conn. 582, 597 (2009),[] construing the exclusion for "physical or mental abuse" to include an implicit intent-to-harm requirement would render it redundant. See Merrimack Mut. Ins. Co. v. Ramsey, 117 Conn. App. 769, 772-73 (2009) (reading "implicit intentionality requirement" into physical-abuse exclusion "is plainly unreasonable" because clause contains no language "provid[ing] that a consideration of the abuser's intent is required. In fact, the policy contains a separate exclusion that applies specifically to intentional acts."), cert. denied, 294 Conn. 920 (2009).[]
>
> . . . .
>
> The Court therefore concludes that an improper "use," or maltreatment, of another is "abuse." Stated another way, an act constitutes "abuse" if it deviates from proper "use," and "abuse" of another person is therefore maltreatment that deviates from a baseline societal understanding of what is appropriate conduct. The act of abuse may, but is not required to be motivated by an insured's subjective expectation or intent that bodily injury will occur.

Id. at 9-10.

The Doe Defendants argue that the term "abuse" is ambiguous, relying on Dorchester Mut. Ins. Co. v. Krussell, 485 Mass. 431 (2020). There the court concluded:

> In sum, as evinced by the several dictionary definitions and the varying interpretations in different courts, there appears to be no judicial consensus as to whether abuse -- here "physical abuse" -- connotes any conduct whatsoever that causes physical harm, or, instead, a subset of physically harmful conduct characterized by an "abusive" quality, such as an imbalance of power. In light of these diverging interpretations, we conclude that the term "abuse" is susceptible of more than one meaning and reasonably intelligent persons could differ as to which meaning is the proper one. Hence, the term is ambiguous. See Citation Ins. Co., 426 Mass. at 381 . . . .

-15-

Id. at 740. However, Dorchester Mutual is not an application of Connecticut law, nor is it persuasive authority.

The Doe Defendants discuss Vecsey but argue that "[t]his is a motion for judgment on the pleadings, where all allegations and inferences are deemed favorable to the non-movant, thus the Vecsey decision is distinguishable." (Does' Mem. at 12.) However, in Vecsey, the court quoted the Connecticut Supreme Court's statement of principles applicable to insurance coverage disputes:

> Construction of a contract of insurance presents a question of law for the court . . . . An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract. In accordance with those principles, the determinative question is the intent of the parties, that is, what coverage the insured expected to receive and what the insurer was to provide, as disclosed by the provisions of the policy. If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. Under those circumstances, the policy is to be given effect according to its terms. When interpreting an insurance policy, [the Court] must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result.
>
> In determining whether the terms of an insurance policy are clear and unambiguous, a court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading. Under those circumstances, any ambiguity in the terms of an

-16-

insurance policy must be construed in favor of the insured because the insurance company drafted the policy. This rule of construction may not be applied, however, unless the policy terms are indeed ambiguous.

Vecsey, 2010 WL 3925126, at 7-8 (quoting Nat'l Grange Mut. Ins. Co. v. Santaniello, 290 Conn. 81, 88–89 (2009)). See also Cmty. Action for Great Middlesex Cty, Inc. v. Am. Alliance Ins. Co., 254 Conn. 387, 402 (2000)("[T]he plaintiff has not identified any case . . . in which a policy exclusion for abuse or molestation has been deemed ambiguous. We conclude, therefore, that the language of the plaintiff's policy excluding abuse and molestation from coverage is clear and unambiguous.").

The alleged harm to the Doe Defendants resulting from Lamb's conduct is also covered by the exclusion for bodily injury or property damage which is expected or intended by the insured.

> Where a policy excludes coverage for damages resulting from intentional acts, the court examines the factual allegations to determine whether intentional acts and intended results are present . . . . The result is that even when an action is pleaded as an unintentional tort, such as negligence, the court examines the alleged activities in the complaint to determine whether the insured intended to commit both the acts and the injuries that resulted. If so, regardless of the title of the action, the court holds the action to be outside the coverage of the policy. . . . . Furthermore, harmful intent may be inferred at law in circumstances where the alleged behavior in the underlying action is so inherently harmful that the resulting damage is unarguably foreseeable.

-17-

General Ins. Co. of Am. v. Okeke, 182 Conn. App. 83, 97-8 (2018)(quotation marks and citations omitted). The pertinent facts in General Ins. Co. were as follows:

> The underlying action against Michael included two counts that expressly alleged intentional acts—intentional assault in count one and intentional infliction of emotional distress in count four—and purported to allege negligent assault in count two and negligent infliction of emotional distress in count three. Although captioned negligent assault, count two in Craft's complaint against Michael alleged that the occurrence was due to Michael's negligence and carelessness in that he violently struck the plaintiff about the head, shoulder and torso, causing serious injury to the plaintiff, when he knew or should have known that this conduct was likely to inflict injury . . . . Calling such conduct negligence does not make it negligent. Similarly, count three, which alleges negligent infliction of emotional distress, incorporates the following allegations from count one: At that time and place, the minor defendant stabbed, assaulted, and beat the plaintiff, and [t]he assault, stabbing, and beating by Michael Okeke was willful, wanton, and malicious. These allegations are plainly inconsistent with a negligence claim. They plainly describe intentional conduct.

Id. at 99 (quotation marks omitted).

The factual allegations in the Underlying Action show that Lamb acted intentionally. The conduct occurred over several years, and Lamb used more than one computer to hack into the cloud-based accounts of the Doe Defendants. Lamb obtained and posted nude photographs online, in addition to posting disparaging comments about his victims. He shared the material with people who knew the victims. The complaint in the Underlying Action alleges:

> From approximately 2012 through 2018, the defendant, Christopher Lamb, used the Computer, IP address, modem, router and/or cell phone service to hack into the cloud-based personal accounts and social media accounts of the plaintiff, where he gained access to the content contained therein, including, but not limited to, nude photographs of the plaintiff and thereafter posted nude photographs of the plaintiff and posted disparaging comments or created a forum for disparaging comments to be made about the plaintiff on social media sites and/or forwarded via electronic means said material to the plaintiff's contacts, parents, friends, teachers, school administrators, and places of employment.

Second Am. Compl. in Underlying Action, ECF No. 41-1, First Count, ¶6. These factual allegations from the First Count are incorporated by reference in the subsequent counts. These allegations are plainly inconsistent with a negligence claim and plainly describe intentional conduct. That is why Lamb was charged with criminal offenses and pled guilty to these crimes.

Thus, Lamb's conduct alleged in the Underlying Action was so inherently harmful that the resulting emotional harm suffered by the Doe Defendants was unarguably foreseeable, and under the circumstances here was, as a matter of law, expected and intended.

## IV.   CONCLUSION

For the reasons set forth above, the Motion for Judgment on the Pleadings (ECF No. 48) is hereby GRANTED. The Clerk shall enter judgment accordingly and close this case.

It is so ordered.

-20-

Dated this 10th day of September 2021, at Hartford, Connecticut.

                                        /s/AWT
                                    Alvin W. Thompson
                                 United States District Judge